UNITED STATES DISTRICT COURT DISTRICT OF ARIZONA

TUCSON DIVISION

Jason Adam Jensen,

Plaintiff,

v.

X.com (formerly Twitter, Inc.), ELON MUSK, xAI Corp., and TESLA, INC.,

Defendants.

Case No. CV-25-_____-TUC-_____

**COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, UNCONSTITUTIONAL APPLICATION OF SECTION 230, ELECTION TAMPERING AND UNDISCLOSED CONTRIBUTIONS, BREACH OF CONTRACT, UNJUST ENRICHMENT, AND ANTITRUST VIOLATIONS**

Plaintiff, Jason Adam Jensen, appearing pro se, files this Complaint against Defendants X.com (formerly Twitter, Inc.), Elon Musk, xAI Corp., and Tesla, Inc., for systemic and discriminatory practices that violate federal law, including the Americans with Disabilities Act (ADA), constitutional principles of free speech and due process, election tampering, undisclosed political contributions, breach of contract, unjust enrichment, and antitrust laws.

## I. INTRODUCTION

This Complaint seeks to address X.com's systemic and discriminatory practices that violate federal law, including the Americans with Disabilities Act (ADA) and constitutional principles of

free speech and due process, enabled by an unconstitutional application of Section 230 of the Communications Decency Act. Furthermore, this Complaint alleges that Defendants Elon Musk and xAI Corp. have engaged in election tampering and manipulation, leveraging the X.com platform and its associated technologies, including Grok, as an undisclosed political contribution and a tool for partisan influence. Mr. Jensen, a neurodivergent individual diagnosed with autism, has experienced prolonged and targeted suppression of his online presence, amounting to effective "deletion" from public discourse, without notice or recourse, while Defendants actively manipulate the very public square he is denied access to. This Complaint further alleges that Defendant Tesla, Inc., under the direction of Defendant Elon Musk, has engaged in anti-competitive practices and potentially undisclosed political contributions by prioritizing xAI's interests over its own, thereby facilitating election manipulation and consolidating Defendant Musk's power.

## II. JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 22 U.S.C. § 1331 (federal question jurisdiction) as the claims arise under the Americans with Disabilities Act, the First and Fifth Amendments to the U.S. Constitution, Section 230 of the Communications Decency Act, and federal election laws. Venue is proper in this District pursuant to 22 U.S.C. § 1391(b) as the Defendants conduct business in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred herein.

## III. PARTIES

1. Plaintiff Jason Adam Jensen is a pro se individual residing in Tucson, Arizona.
2. Defendant X.com (formerly Twitter, Inc.) is a Delaware corporation with its principal place

of business in San Francisco, California, and operates an interactive computer service accessible nationwide, including in the District of Arizona. Address: 1355 Market Street, Suite 900, San Francisco, California, 94103

3. Defendant Elon Musk is an individual residing in Texas and is the owner and controlling figure of X.com, Tesla, Inc., SpaceX, and xAI Corp. He is directly responsible for the policies and operations of all these entities, particularly those related to content moderation, algorithmic design, and strategic direction. 1 Tesla Road, Austin, Texas 78725 (using Tesla's principal business address)

4. Defendant xAI Corp. is an American artificial intelligence company founded by Elon Musk. xAI acquired X.com in March 2025 for $33 billion, with a full valuation of $45 billion including $12 billion in debt, and has integrated its Grok AI assistant into Tesla vehicles. xAI is directly involved in the development and deployment of AI technologies, including Grok, which are used on the X.com platform and are central to the alleged election manipulation. Address: 1450 Page Mill Road, Palo Alto, California 94304

5. Defendant Tesla, Inc. is a Delaware corporation with its principal place of business in Austin, Texas. Tesla, Inc. is an electric vehicle and clean energy company, and is controlled by Defendant Elon Musk. Tesla, Inc. is directly involved in the anti-competitive practices and alleged undisclosed political contributions by prioritizing xAI's interests and facilitating the integration of Grok with X.com. Address: 1 Tesla Road, Austin, Texas 78725.

## IV. FACTUAL ALLEGATIONS

1. **Plaintiff's Disability and Need for Accommodation:** Plaintiff Jason Adam Jensen is an individual diagnosed with **autism spectrum disorder**, a neurodevelopmental condition recognized as a disability under the Americans with Disabilities Act. This disability

significantly impacts his social communication and interaction, particularly in online environments where nuanced social cues and algorithmic filtering play a critical role in engagement and understanding. As a neurodivergent individual, Plaintiff's interactions and communication patterns may differ from neurotypical users, necessitating reasonable accommodations to ensure equal access to and participation in public communication platforms.

2. **Prolonged Account Suppression and "Shadow Banning":** Since **April 3, 2019**, Plaintiff's X.com account, @temperne, has been subject to an appeal process that has remained unaddressed, effectively suspending his access and visibility. This long-standing issue is compounded by a pattern of "shadow banning" and content throttling, where Plaintiff's posts receive minimal views and his reach is severely limited, often dropping to zero.

3. **Targeted Spam Attacks and Algorithmic Manipulation:** Plaintiff has observed and documented that his posts are consistently targeted by "fake porn accounts" that "like" his content shortly after posting. This malicious activity, which Plaintiff alleges is orchestrated, leads to his content being "sequestered" or "throttled" by X.com's algorithms, further suppressing his visibility and engagement.

4. **Non-Responsive and Inadequate Support:** Despite numerous attempts to seek clarification and resolution from X.com's support team, Plaintiff has received generic, unhelpful responses, often directing him to FAQs or closing his tickets without addressing his specific complaints. This lack of meaningful engagement and refusal to provide a transparent appeal mechanism for "shadow banning" demonstrates a profound failure of good faith.

5. **Analytics Data as Evidence of Throttling:** Account analytics data from **January 2025**

shows extreme fluctuations in impressions and engagement, with sharp spikes followed by immediate and severe declines. For example, impressions jump from **7.5K** to **173.3K** and then drop back down, while engagement rates fluctuate from **3.2%** to **1.4%**. This volatile pattern is consistent with algorithmic suppression rather than organic user engagement.

6. **Requests for ADA Accommodations Ignored:** Plaintiff, identifying as an autistic and neurodivergent individual, has explicitly requested ADA accommodations from X.com to understand why his "neurodivergent interactions" are being filtered and throttled. These requests have been met with generic responses or silence, effectively denying him the ability to participate equally on the platform.

7. **Elon Musk's Undisclosed Election Contribution and Tampering:** Defendant Elon Musk, through his acquisition and control of X.com, has made public statements asserting his direct influence on election outcomes, stating, "Without me, Trump would have lost the election, Dems would control the House and the Republicans would be 51-49 in the Senate." This statement, made on X.com on **June 5, 2025**, is a direct admission of election tampering and manipulation. The **October 28, 2022**, $44 billion purchase price of Twitter (now X.com) and the subsequent leveraging of this platform for political influence, without proper disclosure as a political contribution, constitutes an unlawful and undisclosed election contribution.

8. **Election Manipulation Tactics:** Defendants X.com and Elon Musk, through the platform's algorithmic design and content moderation policies, engage in election manipulation tactics akin to those previously attributed to foreign actors. The U.S. Intelligence Community concluded that the Russian government interfered in past elections, specifically the **2016, 2018, and 2020 U.S. elections,** by using fake social

media accounts and bots to spread disinformation and sow discord. Defendants' alleged "shadow banning" and content throttling, particularly when applied to certain political narratives or individuals, mirrors these tactics, directly impacting the integrity of democratic processes.

9. **AI-Enabled Election Manipulation via Grok "Triggers":** The integration of xAI's Grok chatbot with the X.com platform, under the direct control of Defendant Elon Musk, creates an unprecedented mechanism for **massive election manipulation**. Grok's advanced AI capabilities allow for real-time analysis of political discourse, sentiment, and emerging narratives across the X.com platform. This enables the Defendants to identify "triggers"—specific keywords, topics, or events—that can be used to direct resources and strategically respond to political tides. By leveraging Grok, Defendants can:
    - **Amplify favored narratives:** Rapidly detect and boost content aligned with their political agenda.
    - **Suppress opposing viewpoints:** Identify and algorithmically reduce the visibility of content that contradicts their preferred narratives, including through subtle "shadow banning" or de-prioritization.
    - **Micro-target messaging:** Use AI to identify specific user demographics and deliver tailored political messages or advertisements, maximizing impact.
    - Orchestrate rapid responses: Gain a significant advantage in responding to breaking political news or opponent messaging by using Grok to generate and disseminate counter-narratives almost instantaneously.

    This sophisticated, AI-driven manipulation of information flow and public sentiment constitutes a direct and powerful form of election interference, far exceeding traditional campaign tactics and operating with an opaque, algorithmic advantage.

10. **Elon Musk's Political Party Aspirations and Use of X.com:** Defendant Elon Musk has publicly expressed intentions to launch a new political party, the "America Party," with stated goals of disrupting existing political structures and influencing congressional seats. He has actively used X.com as a primary vehicle to promote his political views, gather feedback for his party, and engage in political discourse. This direct use of a dominant social media platform by its owner to further personal political ambitions, while simultaneously suppressing dissenting voices or those deemed "troubled classes," constitutes an abuse of market power and an attempt to subvert democratic processes.

11. **Tesla's Prioritization of xAI and Grok Integration:** Defendant Tesla, Inc., under the direct control and direction of Defendant Elon Musk, has allegedly given up its priority status for critical resources, including but not limited to Nvidia chips, to Defendant xAI Corp. to facilitate the development and integration of Grok AI with X.com. This action by a publicly traded company, Tesla, Inc., to divert valuable resources and strategic priority to a privately held entity (xAI) controlled by the same individual (Elon Musk) constitutes:
    - **Breach of Fiduciary Duty:** A potential breach of fiduciary duty to Tesla shareholders by prioritizing the interests of xAI and Elon Musk's political ambitions over the financial and strategic interests of Tesla, Inc.
    - **Undisclosed Political Contribution:** The value of this diverted priority and resources from Tesla to xAI, which is then used to enhance X.com's capabilities for political influence, constitutes an undisclosed and unlawful political contribution.
    - **Anti-Competitive Behavior:** This prioritization of xAI over Tesla's own AI development, particularly for Grok's integration with X.com, further consolidates Defendant Musk's control over critical AI and social media infrastructure, creating an anti-competitive advantage for his personal and political ventures.

12. **Anti-Competitive Practices and Foreign Funding of Acquisition:** The acquisition of Twitter for $44 billion by Elon Musk, and its subsequent integration into xAI, involved significant funding from foreign investors, including Saudi Prince Alwaleed bin Talal Al Saud and his Kingdom Holding Company ($1.89 billion), and Qatar Holding (Qatar's sovereign wealth fund). This foreign influence, combined with the leveraging of anti-competitive connections with Tesla and SpaceX (such as diverting Nvidia chips from Tesla to X.com and xAI, and integrating Grok into Tesla vehicles), demonstrates a concerted effort to consolidate power and influence across multiple critical sectors. The rolling of X.com's debt into xAI, with Tesla allegedly funding xAI, effectively means that Tesla, a publicly traded company, is indirectly financing a politically influential social media platform and its AI, raising serious concerns about corporate governance, shareholder interests, and undisclosed political expenditures.

13. **Preferential Treatment and Election Interference:** Defendant Elon Musk, upon acquiring X.com on **October 28, 2022**, unilaterally reinstated the account of President Donald Trump on **November 20, 2022**, who had previously received a permanent ban from the platform. This reinstatement occurred without any public change in X.com's stated rules or policies regarding permanent bans, nor was there any indication of a comprehensive review process applied equally to other users who had received similar permanent bans. This action, taken by Defendant Elon Musk, demonstrates a clear pattern of **preferential treatment** for politically favored individuals, directly contradicting any claims of neutral content moderation. This selective application of rules, particularly to a prominent political figure, constitutes a direct act of **election interference** and **manipulation of public discourse** by providing a powerful platform to one individual while others, like Plaintiff, remain suppressed without recourse.

## V. CAUSES OF ACTION

### A. Count I: Violation of the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.)

14. X.com's platform, by its design, algorithms, and non-responsive support mechanisms, discriminates against individuals with disabilities, specifically those with mental health conditions such as autism. The "shadow banning" and content throttling, particularly of "neurodivergent interactions," constitutes a denial of equal access and effective communication.

15. The ADA requires reasonable accommodations for individuals with disabilities to ensure equal access to public accommodations and services. X.com's failure to provide transparent explanations for account suppression, a functional appeal process, and specific accommodations for Plaintiff's disability violates these requirements.

16. The effective "deletion" of Plaintiff's online presence, as evidenced by the analytics data and lack of visibility, directly contradicts the ADA's purpose of promoting the full participation and inclusion of individuals with disabilities in society. This systemic silencing prevents individuals with mental illnesses from sharing their stories, competing with vast marketing interests, and otherwise degrades a protected class without any possible resolve or relief.

### B. Count II: Section 230 of the Communications Decency Act is Unconstitutional as Applied to X.com, Violating the First and Fifth Amendments

17. Historically, the allocation of public communication channels, such as radio frequency (RF) spectrum, was tightly regulated by the Federal Communications Commission (FCC) due to scarcity. Early legal interpretations balanced freedom of speech with the reality that only one entity could "talk" on a given frequency at a time.

18. The internet, by contrast, offers "vast pipelines" allowing for mass dissemination and theoretically enabling "everyone to talk." However, this theoretical freedom is undermined by the corporate ownership of each IP address and the infrastructure of mass dissemination, which effectively places control over public discourse in the hands of private corporate interests like X.com.

19. X.com, due to its immense scale and pervasive influence over public communication, functions as a de facto "common carrier" for public discourse. Its control over the "IP address" and algorithmic dissemination of content grants it a power analogous to traditional common carriers, yet it operates without the corresponding obligations of neutrality and non-discrimination.

20. Section 230(c)(2) of the Communications Decency Act grants interactive computer services broad immunity from liability for content moderation decisions made in "good faith." However, when applied to a platform that effectively acts as a common carrier and engages in opaque, discriminatory, and non-transparent content suppression, Section 230 becomes unconstitutional.

21. X.com's practices, including indefinitely pending appeals, "shadow banning" without notification, and algorithmic throttling of protected classes, demonstrate a lack of "good faith" and constitute state action through its pervasive influence over public discourse. This broad immunity, as applied, violates:
    - **The First Amendment:** By enabling X.com to censor or suppress speech, particularly from marginalized groups like the mentally ill, without accountability or transparency, thereby chilling free expression.
    - **The Fifth Amendment (Due Process):** By allowing X.com to remove or isolate users from public discourse without any notification, explanation, or meaningful

opportunity for appeal. The vague and arbitrary nature of X.com's content moderation practices, particularly "shadow banning," circumvents the fundamental requirements of due process.

### C. Count III: Election Tampering, Undisclosed Political Contributions, and Violation of Federal Election Laws

22. Defendant Elon Musk's public statements regarding his direct influence on election outcomes, combined with his ownership and control of X.com, demonstrate an intent and action to tamper with federal elections.

23. The acquisition of Twitter (now X.com) for $44 billion, significantly financed by foreign entities, and its subsequent use as a platform for political influence and the promotion of Defendant Musk's political agenda, constitutes an undisclosed and unlawful political contribution, violating federal election laws.

24. Defendants X.com, Elon Musk, and xAI Corp., through the use of Grok and other AI technologies, engage in sophisticated election manipulation by controlling the dissemination of information, suppressing opposing viewpoints, and amplifying favored political narratives, thereby undermining the integrity of democratic elections. This manipulation is analogous to, and potentially more pervasive than, the use of bots and disinformation campaigns by foreign adversaries to influence U.S. elections.

### D. Count IV: Breach of Contract and/or Implied Covenant of Good Faith and Fair Dealing

25. By offering a platform for public communication and engagement, X.com enters into an an implied contract with its users, which includes a covenant of good faith and fair dealing.

26. X.com's actions, including the prolonged failure to address Plaintiff's appeal since 2019,

the implementation of opaque "shadow banning" practices, and the consistent provision of non-responsive support, constitute a breach of this implied contract and the covenant of good faith and fair dealing.

### E. Count V: Unjust Enrichment and Violation of Fair Labor Standards Act

27. X.com benefits immensely from user-generated content, which constitutes uncompensated labor that drives its for-profit business model. By unilaterally suppressing, deleting, or otherwise manipulating this content while simultaneously profiting from the overall body of user contributions, X.com is unjustly enriched.

28. This practice, when viewed in the context of X.com's effective control over content dissemination and its failure to compensate users for their contributions, may constitute a violation of the Fair Labor Standards Act, as users are providing valuable labor without remuneration.

### F. Count VI: Antitrust Violation and Violation of Public Policy

29. X.com's dominant market position in online public discourse, combined with its practices of content control and suppression, creates a "limited monopoly" that contravenes public policy, particularly concerning free and open elections and the free exchange of ideas.

30. The ability of a single corporate entity, controlled by Defendant Elon Musk and xAI Corp., to exert such pervasive control over public communication, as demonstrated by the Department of Justice's findings regarding foreign interference in elections via social media, represents a significant threat to a sovereign union and may constitute an antitrust violation under the Sherman Act.

31. The leveraging of anti-competitive connections with Tesla and SpaceX, including the alleged diversion of Nvidia chips and the integration of Grok into Tesla vehicles, further

exacerbates this monopolistic control and extends Defendant Musk's influence across critical technological and communication sectors. The rolling of X.com's debt into xAI, with Tesla allegedly funding xAI, effectively means that Tesla, a publicly traded company, is indirectly financing a politically influential social media platform and its AI, raising serious concerns about corporate governance, shareholder interests, and undisclosed political expenditures.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jason Adam Jensen, respectfully prays that this Honorable Court:

1. Declare that X.com's, Elon Musk's, xAI Corp.'s, and Tesla, Inc.'s practices, as applied to Plaintiff, violate the Americans with Disabilities Act.

2. Declare that Section 230(c)(2) of the Communications Decency Act is unconstitutional as applied to X.com, Elon Musk, xAI Corp., and Tesla, Inc., particularly when their practices violate the First and Fifth Amendments.

3. Declare that Defendants Elon Musk, X.com, xAI Corp., and Tesla, Inc. have engaged in election tampering and have made undisclosed and unlawful political contributions.

4. Issue a permanent injunction requiring Defendants X.com, Elon Musk, xAI Corp., and Tesla, Inc. to:

    a. Cease and desist from "shadow banning" or content throttling without clear notice and a transparent appeal process.

    b. Implement reasonable accommodations for users with disabilities, including clear communication channels and fair review processes for content moderation decisions.

    c. Provide a clear and timely mechanism for users to appeal content moderation decisions, including "shadow banning," with a good faith review process.

    d. Provide Plaintiff with a full accounting of all content moderation actions taken against his accounts, including reasons and specific policies violated.

    e. Divest X.com from Elon Musk and xAI Corp. to prevent further election tampering and anti-competitive practices.

    f. Disclose all foreign investments and financial ties related to the acquisition and operation of X.com and xAI Corp.

    g. Cease and desist from diverting resources from Tesla, Inc. to xAI Corp. for the purpose of political influence or anti-competitive advantage.

5. Award Plaintiff compensatory and punitive damages for the harm suffered as a result of Defendants' unlawful and discriminatory practices.

6. Award Plaintiff such other and further relief as the Court deems just and proper.

DATED: August 27, 2025

Respectfully submitted,

/s/ Jason Adam Jensen

Jason Adam Jensen, Pro Se

4449 East 13th Street

Tucson, AZ 85711

jasonajensen@gmail.com

402-598-1285

**CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE**

I, Jason Adam Jensen, certify that Artificial Intelligence was used in the preparation of this document. I have reviewed and verified the accuracy and appropriateness of the

AI-generated content and take full responsibility for it as if it were my own work, in accordance with FRCP 11 and all applicable Local Rules. This document was written in its entirety by Google's Gemini Flash 2.5 with a Gem loaded with document located at https://github.com/TemperedEnterprises/DistrictOfArizonaAIRegulatory . The user then uploaded documents as evidence and prompted the system to generate a complaint with specific claims, some claims were at the machine's own accord. Jensen has read, and agrees with this filing, as the entire system is based on 3 years of his labor, a 45mb reasoning document, and AI Operational Framework to recursively access complex data like law in contexts of jurisdictional perspective, asserts this work is his own, simply input, transformed by distributed compute process and then reformed by a type of averaging function of probability that if everything Gemini's model ever read, and my command to write this complaint was the last bit of training data, then this complaint was the next words of the unwritten calculus which is neurogenic computational models. In other words, Jensen asserts his Gemini "typewriter" took his intentions and translated his autism to English for you to process. It has the added benefit of removing his personality after years of dealing with abusive processes.

/s/ Jason Adam Jensen

Jason Adam Jensen